Filed 5/10/22

CERTIFIED FOR PARTIAL PUBLICATION*

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D078841 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. INF1701983) |
| FERNANDO CARLOS LOPEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Dale R. Wells, Judge. Convictions affirmed; sentence vacated and remanded for resentencing.

Susan K. Shaler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

---

* Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts III.A and III.B.

I.

INTRODUCTION

Defendant Fernando Carlos Lopez appeals from a judgment entered after a jury found him guilty of premeditated attempted murder, assault with a semiautomatic firearm, and being a felon in possession of a firearm. In challenging his convictions, Lopez raises two related contentions. First, Lopez argues that the trial court abused its discretion in denying his motion for mistrial. Lopez contends that the prosecution was permitted to elicit information from a witness that suggested that Lopez was a member of a gang, and that the prosecutor's comments about this evidence during closing arguments implied that Lopez was a gang member, all of which violated a pretrial ruling prohibiting evidence linking Lopez to a gang. Lopez argues in the alternative that the court's decision to admit what Lopez refers to as "gang evidence" was an abuse of discretion under Evidence Code section 352 because, he asserts, the evidence was more prejudicial than probative. We conclude that neither of these arguments has merit.

After full briefing on appeal was completed in this matter, Lopez sought leave to file two supplemental briefs in which he contends that this court should vacate his sentence and remand for resentencing in light of recent ameliorative changes to two different sentencing schemes applicable to his case. We agree with Lopez that he is entitled to resentencing given the recent changes in the law, which the parties agree apply retroactively to nonfinal cases.[1] We therefore affirm Lopez's convictions, but vacate his

---

[1] Although the People concede that the recent changes in the law apply retroactively to nonfinal cases, the People do not concede that remand for resentencing is necessary in this case. We conclude otherwise, as discussed in part III.C, *post*.

sentence and remand to allow the trial court to resentence Lopez under current sentencing laws.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual background*

Lopez and Gabriel A., who are cousins, lived near each other in Coachella. On the morning of November 4, 2017, Lopez and Gabriel drove to the home of a friend of Gabriel's mother.[2] The friend was not home, so they decided to visit another cousin, Gilbert R., in Indio.

According to Gilbert's testimony at trial,[3] when Lopez and Gabriel arrived, all three men used methamphetamine. Gabriel testified that only Gilbert and Lopez "started doing lines [of methamphetamine]." Gabriel had brought some cigarettes. Lopez wanted to smoke the last one, but Gabriel refused to give Lopez the cigarette. Lopez seemed upset that Gabriel did not want to give Lopez his last cigarette. Gabriel testified that he thought that he and Lopez "ended up sharing the last [cigarette]."

Gabriel went out to the front yard and began to water the lawn. As he was watering the lawn, he heard a loud noise and his ears started to ring. He bent over and "grabbed the back of [his] head"; he "knew something was wrong." Gabriel recognized the sound as a gunshot.

Gabriel turned around and saw Lopez standing and "fumbling with" a nine-millimeter semi-automatic handgun; Gabriel was familiar with guns

---

[2]    At the time of these events, Gabriel was on parole and lived with his mother. He was also a long-time drug user.

[3]    Gilbert was subpoenaed to testify and was a reluctant witness.

and recognized the type of firearm that Lopez was holding. The gun appeared to be jammed.

Gabriel watched as Lopez made several attempts to clear the jammed cartridge. Lopez kept looking back and forth between the firearm and Gabriel; Gabriel thought that Lopez was "getting nervous." Gabriel asked Lopez multiple times, " 'Why me, primo? What's going on?' " At first Lopez did not respond to Gabriel, but Lopez eventually locked eyes with Gabriel and said, " 'You better run.' "

Gabriel took off running to a nearby house where he knocked on the door. No one answered. In the meantime, Gilbert had come to the front of the house after having heard a loud noise that sounded "like a pop." Gilbert and Lopez "were actually trying to get [Gabriel] to come back" to Gilbert's house, but Gabriel refused, telling Gilbert that Lopez had shot him.

Gabriel ran to another house but there was no answer at that house, either. Gabriel then saw a vehicle pull into the driveway of a third house, and he ran there to seek assistance. Someone at that house called the police.

When police and paramedics arrived at the scene, Gabriel was sitting on a curb holding a towel to the back of his head. A "substantial amount of blood [was] coming down from his head and neck area." Gabriel gave a responding detective a false name; Gabriel was concerned that there might be an outstanding warrant for his arrest because he was on parole and had failed to attend required drug classes. Gabriel told a detective that someone in a red car had driven by and shot him.

Gabriel was transported to a hospital. The detective arrived at the hospital to speak with him further. While at the hospital, Gabriel repeated his story about being the victim of a drive-by shooting and told the detective that he did not want the shooter to be prosecuted. In the meantime, the

4

detective had learned that Gabriel had given him a false name, and he believed that he knew Gabriel's real name. The detective confronted Gabriel with this information. Gabriel admitted that he had lied to the detective because he was afraid that there was "a parole hold on him."

When the detective asked Gabriel who had shot him, Gabriel asked for a notepad and pen. According to the detective, Gabriel appeared to be "a little reluctant, seemed a little frightened." Gabriel wrote down Lopez's name on the piece of paper; he did not want anyone to hear him say Lopez's name because he was "scared" and "afraid of retaliation." He expressed that he was reluctant to press charges and "needed to think about it." At trial, Gabriel testified that part of his reason for initially lying about the incident was because he was scared to be labeled a "rat" or a "snitch[ ]." He explained that the people in his neighborhood, including some gang members, tend to avoid talking to the police.

Later, a different detective spoke with Gabriel's mother. She told the detective that Gilbert had told her that Lopez shot Gabriel. This detective then spoke with Gabriel, and presented Gabriel with a photographic lineup. Gabriel identified Lopez as the person who shot him. The detective also interviewed Gilbert. Gilbert was reluctant to discuss the shooting, but he eventually told the detective that when he went to his front yard after hearing a loud pop, he saw Gabriel running to a neighbor's house; Lopez ran in the opposite direction, jumped over a wall, and fled. When Gilbert asked Gabriel later that day what happened, Gabriel said, " 'He shot me.' " Gilbert indicated to the detective that he had overheard an argument between Lopez and Gabriel about cigarettes, and further indicated that his impression was that Lopez was upset with Gabriel and "took [Gabriel's comments] as very disrespectful."

5

B.  *Procedural background*

An information filed in January 2018 charged Lopez with willful, deliberate, and premeditated attempted murder (Penal Code,[4] §§ 187, subd. (a), 664; count 1); assault with a semiautomatic firearm (§ 245, subd. (b); count 2); and being a felon in possession of a firearm.  (§ 29800, subd. (a); count 3).  With respect to count 1, the information alleged that Lopez used a firearm during the commission of the offense (§ 12022.53, subds. (d) and (e)), and that he personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a)).  With respect to count 2, the information alleged that Lopez personally used a firearm during the commission of the offense (§ 12022.5, subd. (a)), and that he inflicted great bodily injury on the victim (§ 12022.7, subd. (a)).  Finally, the information alleged that Lopez had previously suffered a strike conviction (§ 667, subd. (c)) and a serious felony conviction (§ 667, subd. (a)), and that he had served five prior prison terms (§ 667.5, subd. (b)).

On October 7, 2020, a jury convicted Lopez on all three counts.  The jury found true the allegations regarding Lopez's use of a firearm and the infliction of great bodily injury.  In a bifurcated court trial, the court found true that Lopez had suffered a prior "strike" conviction and a prior serious felony conviction (§ 667, subds. (a), (c), & (e)(1)).

The trial court sentenced Lopez to prison for an indeterminate term of 39 years to life, plus a determinate term of 11 years.  The 39-years-to-life term consisted of a term of 14 years to life with respect to count 1, plus an additional 25 years to life for the related firearm enhancement; the determinate term consisted of an upper term of 6 years with respect to count

_____

[4]     Further statutory references are to the Penal Code unless otherwise indicated.

3, and a consecutive term of 5 years with respect to the serious felony enhancement. The court imposed but stayed the sentence as to count 2 and its enhancements, pursuant to section 654.

Lopez filed a timely notice of appeal.

## III.

## DISCUSSION

### A. *The trial court did not abuse its discretion in denying Lopez's motion for mistrial*

Lopez contends that the trial court erred in denying his motion for mistrial, which was based on the ground that the prosecutor introduced "gang evidence" at trial and made references to this evidence during closing argument, in violation of a pretrial ruling that such evidence would be excluded.

#### 1. *The ruling on the motions in limine*

Prior to trial, Lopez filed a motion in limine requesting that any gang evidence be excluded. The prosecution filed a motion in limine seeking the admission of evidence regarding Lopez's association with a gang; according to the prosecution, the case involved gang-related matters.

During argument on the issue, the prosecutor contended that evidence regarding Lopez's gang involvement was admissible to explain why Gabriel initially lied to the police about who had shot him. The trial court ruled that gang evidence would be excluded on the ground that such evidence was more prejudicial than probative under Evidence Code section 352, but stated that the court could revisit the issue, depending on how the presentation of evidence evolved at trial.

Later, the trial court held an Evidence Code section 402 hearing regarding the scope of admissibility of references to gangs in the context of

7

explaining Gabriel's initial statements to police. At that hearing, Gabriel testified about the shooting. Gabriel acknowledged that he had been a member of a gang but had dropped out of the gang approximately four years prior to the shooting. At the conclusion of the hearing, the court ruled that, with respect to Gabriel's initial false story to police about the circumstances of the shooting, evidence regarding the fact that Gabriel's family and friends may have had connections to a gang would be admissible to explain Gabriel's concern about police involvement. However, evidence that the shooting was somehow gang-related, including evidence that Gabriel had been in a gang but dropped out, would not be admitted. The court expressly stated that the prosecutor would not be permitted to elicit information regarding Lopez's involvement in a gang, and would also not be permitted to connect Lopez to a gang to explain why the shooting took place.

2. *The evidence elicited at trial*

The evidence elicited at trial demonstrated that Gabriel initially provided police with a false story about the circumstances of the shooting, stating that it had been a drive-by shooting and that he did not know who had shot him. Gabriel explained that he gave police the false story because he was worried about being labeled a "rat" or a "snitch[ ]." Gabriel was permitted to explain that people in his neighborhood, which included gang members, do not like the police and are not cooperative with them. When asked why he had been afraid to identify Lopez as the shooter when he was being questioned at the hospital, Gabriel testified, over a defense motion to strike, that he had been afraid "because I know what type of person he is."

3. *Closing arguments and the motion for mistrial*

During closing arguments, the prosecutor commented on Gabriel's testimony regarding his reluctance to tell police the truth about the shooting:

8

"He told us about his walk of life, living in the streets as he put it. He told us about how cooperating with law enforcement when you're one of the people in this sort of community who lives in the streets will put him at risk of physical harm. It's kind of the code of the streets that he be labeled as a rat.

"It's kind of like the phrase most of us have heard snitches get stitches. Kind of told us about that walk of life. He came in here and told [it] like it was. He told us about his familial relationship with the defendant, Mr. Lopez, them being cousins, that they grew up together. That he has known Mr. Lopez his entire life. That he was close to his cousin. Close until that one day. Close until November 4th, 2017, when the defendant shot him."

The prosecutor also specifically addressed Gabriel's false story:

"But that statement was also in front of other people. People from the community, people from his family right in front of as – [Gabriel] referred to him Gibby, Gilbert . . . as he's being interviewed by Detective Longoria.

"We heard from [Gabriel] that his family and friends in that sort of community don't want anything to do with law enforcement or their sort of business, that his family and friends are in gangs, that by testifying or cooperating with law enforcement puts your life in danger. This is a guy who was just shot in the back of the [head]. His life is already in danger at this point. And his concern about his life continuing to be in danger, how is that not reasonable in that situation? Then he goes to the hospital. At the hospital he does give Detective Longoria his real name. And he does tell the truth about what occurred."

After the prosecutor concluded his argument, Lopez's attorney moved for a mistrial, arguing that the prosecutor had "described the neighborhood as gang related or gang infested or gang influenced," which, he contended, violated the trial court's pretrial ruling regarding the limitation as to what

9

would be a permissible reference to gangs. The trial court denied the motion, stating, "[T]he ruling was that they were not to draw a line between defendant and gangs, and they didn't. He didn't." Lopez's attorney continued to argue that the prosecutor's comments implied that Lopez was a gang member, but the court reiterated that it had ruled that there could be no reference to the shooting having been in retaliation for Gabriel dropping out of a gang, or to Lopez's gang membership; the court determined that the prosecutor's comments had not violated either prohibition.

    4. *Analysis*

We review a trial court's ruling on a motion for a mistrial for an abuse of discretion. (*People v. Avila* (2006) 38 Cal.4th 491, 573.) " ' "[A] mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction. [Citation.] Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions." ' " (*People v. Cox* (2003) 30 Cal.4th 916, 953, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

Lopez's argument with respect to the purported "gang evidence" is based on the premise that "the evidence and argument of the prosecutor regarding gangs went beyond what was permissible under the trial court's pretrial ruling." Lopez contends that the trial court ruled pretrial that the prosecution could not link Lopez to a gang, and that despite this ruling, "[t]he jury obviously learned Lopez had gang connections." According to Lopez, "[t]he only reasonable inference the jury could make from [Gabriel's] testimony about 'rats' and 'snitches,' gang members in the neighborhood, and [Gabriel] knowing 'what type of person [Lopez] is,' [citation], was that Lopez had gang connections." We disagree with the premise of Lopez's argument.

10

The trial court's pretrial ruling was that Gabriel could explain that he did not want the police involved because he had family members and friends who were involved in a gang, but that the prosecutor could not link Lopez to a gang. The evidence that the prosecutor elicited from Gabriel was consistent with the trial court's ruling. Further, the prosecutor's comments about Gabriel's explanation as to why he initially gave a false story to police similarly hewed to the trial court's ruling. None of the statements made by Gabriel, and none of the prosecutor's comments about Gabriel's story, linked Lopez to a gang. Nor did this evidence imply that Lopez was a gang member and that it was Lopez's gang membership that caused Gabriel to be fearful of him. Gabriel testified that there were gang members in his neighborhood, generally. This does not suggest that Lopez is a gang member; in fact, one could reasonably infer from this testimony that Lopez was *not* in a gang, given the mention of there being gang members in both the neighborhood and in Gabriel's family, and no testimony suggesting that Lopez was in a gang. Further, Gabriel's reference to knowing "what type of person" Lopez is did not suggest that Lopez is a gang member. Rather, as the facts of the case demonstrate, Lopez is the "type of person" who would shoot someone in the back of the head over an argument about a cigarette. Thus, this comment from Gabriel, even in the context of the generic references to knowing that there were gang members in his neighborhood, did not suggest that Lopez was a gang member.

The trial court reasonably concluded that the evidence elicited from Gabriel and the prosecutor's comments about this evidence did not suggest a connection between Lopez and a gang, and that the evidence and the prosecutor's comments about the evidence were consistent with the trial court's pretrial in limine ruling. Given our conclusion that there was no

11

violation of the trial court's pretrial ruling, there could not have been incurable prejudice to Lopez. Thus, the trial court clearly did not abuse its discretion in denying Lopez's motion for mistrial.[5]

B. *The trial court did not abuse its discretion in allowing the prosecutor to elicit evidence, including a reference to gangs, to explain why Gabriel initially provided a false story to police*

In a second, related argument, Lopez contends that the trial court abused its discretion in not prohibiting *all* references to gangs or gang members at trial. He argues that "the trial court's pretrial ruling was not sufficiently broad and should have excluded all references to gangs to avoid undue prejudice to Lopez and a fundamentally unfair trial." According to Lopez, the trial court's ruling permitting Gabriel to discuss gangs in the context of explaining why he initially provided police with a false story constituted an abuse of discretion under Evidence Code section 352 because it "had marginal relevance to [Gabriel's] credibility," and was "inevitably destined to [cause] the jury [to] conclud[e] Lopez had a gang association."

Under Evidence Code section 352, "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of *undue* prejudice, of confusing the issues, or of misleading the jury." " ' "Evidence is not prejudicial . . . merely because it undermines the opponent's position or shores up that of the proponent. The ability to do so is what makes evidence relevant. The code speaks in terms of

---

[5]     Nor did the trial court's denial of Lopez's motion for mistrial result in the denial of due process, as Lopez argues. As we have explained, the evidence that the trial court admitted did not imply that Lopez was a gang member; the denial of Lopez's motion for mistrial therefore did not render his trial fundamentally unfair.

*undue* prejudice. Unless the dangers of undue prejudice, confusion, or time consumption ' "substantially outweigh" ' the probative value of relevant evidence, [an Evidence Code] section 352 objection should fail. [Citation.] ' "The 'prejudice' referred to in [the statute] applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying [Evidence Code] section 352, 'prejudicial' is not synonymous with 'damaging.' " [Citation.]' [Citation.] [¶] The prejudice that [the statute] ' "is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence." [Citations.] "Rather, the statute uses the word in its etymological sense of 'prejudging' a person or cause on the basis of extraneous factors. [Citation.]" [Citation.]' [Citation.] In other words, evidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose." ' " (*People v. Scott* (2011) 52 Cal.4th 452, 490–491.)

We review a trial court's evidentiary rulings for an abuse of discretion. (*People v. Valdez* (2004) 32 Cal.4th 73, 108.)

It is clear that the trial court did not abuse its discretion in ruling that evidence regarding Gabriel's understanding that his neighbors, and even his friends and family, some of whom were affiliated with gangs, would not approve of him cooperating with police, was more probative than prejudicial under Evidence Code section 352, despite the fact that this evidence would indicate that Gabriel was aware of gangs in his social sphere. This evidence

13

was probative to explain why Gabriel initially provided a false story to police; the question of Gabriel's credibility was particularly relevant in this case because the defense's theory was that Gabriel was lying at trial, and that his initial story that he had been shot in a drive-by shooting was true.

Further, there was no prejudice to Lopez from the admission of Gabriel's explanation for his initial false story, even if that explanation included an oblique reference to gangs. Lopez's argument regarding prejudice arising from the admission of the purported "gang evidence" connected to Gabriel's explanation of his false story to police rests on the same faulty presumption that his argument regarding the denial of his motion for a mistrial rested: Lopez presumes that Gabriel's reference to there being gang members in his neighborhood and family was the equivalent of evidence linking Lopez to a gang.[6] However, as we have previously explained, we disagree with the suggestion that the jury would conclude that Lopez was a gang member as a result of Gabriel's testimony that some people in his neighborhood and family were affiliated with gangs. Because we reject the presumption that Gabriel's testimony regarding why he initially provided a false story to police linked Lopez to a gang, we also reject Lopez's argument that the trial court should have concluded that such evidence was more prejudicial than probative under Evidence Code section 352.[7]

---

[6] For example, Lopez asserts in this argument section that "[i]t was a certainty the jury would attribute [Gabriel's] fear and initial false statement to Lopez's gang status once any hint of gangs was admitted into evidence."

[7] To the extent that Lopez also argues that the trial court's evidentiary ruling violated due process, we reject this contention, as well. (See *People v. Lapenias* (2021) 67 Cal.App.5th 162, 174 ["Generally, a court's compliance with the rules of evidence does not violate a defendant's right to due process"].) We also conclude that Lopez's contention that the "admission of

14

C. *Changes to sentencing laws that took effect while this case was pending*

At the time Lopez was sentenced, the trial court had broad discretion to determine whether imposition of the lower, middle, or upper term with respect to count 3 "best serve[d] the interests of justice." (Former § 1170, subd. (b).) Consistent with the law at that time, the trial court identified a number of factors in aggravation and no factors in mitigation, and it ultimately chose to impose an upper term sentence on count 3 based on these aggravating factors.[8]

While Lopez's appeal was pending, the Governor signed Senate Bill No. 567 (Stats. 2021, ch. 731), which made significant changes to section 1170 and became effective on January 1, 2022. Pursuant to Senate Bill No. 567, section 1170, subdivision (b) has been amended to make the middle term the presumptive sentence for a term of imprisonment; a court now must impose the middle term for any offense that provides for a sentencing triad unless "there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the

gang evidence . . . deprived Lopez of his right to an accurate jury determination of the facts" is without merit.

[8] The trial court noted the following factors in aggravation at sentencing: (1) the crime involved great violence and cruelty, viciousness or callousness; (2) the defendant was armed with a weapon at the time of the crime; (3) the victim was particularly vulnerable; (4) the crime indicated sophistication/planning; (5) the defendant took advantage of a position of trust; (6) the defendant's violent conduct indicates a serious danger to society; (7) the defendant's prior convictions are numerous and of increasing seriousness; (8) the defendant served a prior prison term; and (9) the defendant's prior performance on probation, mandatory supervision, post release community supervision or parole was unsatisfactory. (Cal. Rules of Court, rule 4.421(a)(1), (a)(2), (a)(3), (a)(8), (a)(11), (b)(1), (b)(2), (3), & (b)(5).)

defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(1) & (2).)

The People properly concede that Senate Bill No. 567's ameliorative amendments to section 1170, subdivision (b) apply retroactively to all cases not yet final as of January 1, 2022. (See *People v. Flores* (2022) 73 Cal.App.5th 1032, 1039, citing *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 308.) The People argue, however, that despite the retroactive application of Senate Bill No. 567's provisions to Lopez's case, remand for resentencing is not required because (a) the record demonstrates that if a jury had been asked to make a finding on the aggravating factors, it would have found one or more of them true beyond a reasonable doubt, and/or (b) the trial court's reliance on at least one aggravating factor that was not required to be found true by a jury means that the court's selection of the upper term was permissible and may be affirmed.

With respect to the first of these contentions as to why remand is unnecessary, the People assert that Lopez cannot demonstrate that the fact that the new law did not apply to Lopez at the time of sentencing was prejudicial because, according to the People, the record demonstrates that a jury would have found true, beyond a reasonable doubt, the aggravating factors on which the trial court relied in selecting the upper term with respect to count 3.[9]

We agree with the People's contention that where a sentencing factor must be found true by a jury beyond a reasonable doubt and the court fails to

---

9     According to the People, "it is beyond a reasonable doubt that a jury would have found true at least one, if not all, of the other aggravating factors noted by the court in support of the upper term given the violent nature of the offense, and the vulnerability of the victim when appellant shot him in the back of the head."

16

submit that factor to the jury, the error in the court's reliance on that fact may be subject to harmless error review as to whether the lack of a finding by the jury was prejudicial: " 'Failure to submit a sentencing factor to the jury, like failure to submit an element [of the crime] to the jury, is not structural error.' [Citation.]  Such an error does not require reversal if the reviewing court determines it was harmless beyond a reasonable doubt, applying the test set forth in *Chapman v. California* (1967) 386 U.S. 18 . . . . [Citation.] . . . The failure to submit a sentencing factor to a jury may be found harmless if the evidence supporting that factor is overwhelming and uncontested, and there is no 'evidence that could rationally lead to a contrary finding.' (*Neder* [*v. United States* (1999)] 527 U.S. [1,] 19 . . .)" (*People v. French* (2008) 43 Cal.4th 36, 52–53 (*French*), fn. omitted.)

In order to conclude that the trial court's reliance on improper factors that were not found true by a jury or admitted by Lopez was not prejudicial, we would have to conclude beyond a reasonable doubt that a jury would have found true beyond a reasonable doubt *every factor on which the court relied*, because the amended statute requires that every factor on which a court intends to rely in imposing an upper term, with the exception of factors related to a defendant's prior conviction(s), have been admitted by the defendant or proven to a jury (see § 1170, subd. (b)).[10]  We disagree with the

10      Although the People assert with respect to this argument that this court can conclude beyond a reasonable doubt that a jury would have found true beyond a reasonable doubt *all* of the aggravating factors (unrelated to Lopez's prior convictions) on which the trial court relied in imposing the upper term, the People also suggest that we could conclude that at least one aggravating factor would have been found true beyond a reasonable doubt, and that the presence of a single valid factor would be sufficient to obviate the need to remand the case for resentencing.  However, the presence of a single valid aggravating factor is insufficient to permit a reviewing court to affirm a sentence imposed in violation of the revised version of section 1170,

People's suggestion that this test is met in this case. Because the prior version of the Determinate Sentencing Law did not require the prosecution to present evidence directly related to the aggravating factors at trial, the evidence in the record does not permit us to assess whether a jury would have found these factors true beyond a reasonable doubt. Further, Lopez would have had no reason to present evidence that might have contradicted evidence supporting truth of the facts underlying the aggravating factors relied on by the trial court. As a result, we cannot say that as to every factor "the evidence supporting that factor is overwhelming and uncontested, and there is no 'evidence that could rationally lead to a contrary finding.' [Citation.]" (*French, supra,* 43 Cal.4th at pp. 52–53, fn. omitted.) It would be entirely speculative for us to presume, based on a record that does not directly address the aggravating factors, what a jury would have found true in connection with these factors. We therefore cannot affirm Lopez's sentence on this basis.

We also reject the People's suggestion that we need not remand for resentencing because the trial court relied on at least one permissible factor—i.e., a factor related to Lopez's record of prior convictions—that does not require an admission or a true finding under the amended version of the statute. Pursuant to subdivision (b)(3) of section 1170, a trial court "may consider the defendant's prior convictions in determining sentencing based on

subdivision (b). Rather, as we explain in more detail in the next paragraph in the text, a determination by a reviewing court that a jury would have found true only some subset of the aggravating factors on which the trial court relied in selecting an upper term sentence (or that the record reflects the presence of one or more otherwise valid factors based on a defendant's prior convictions) would require the reviewing court to conduct a *second* prejudice inquiry, i.e., whether there is a reasonable probability that the trial court would have selected a term other than the upper term if it had relied solely on a subset of the original factors on which it previously relied.

18

a certified record of conviction without submitting the prior convictions to a jury." The People contend that because the court could have relied on the fact that Lopez had prior convictions without submitting that fact to the jury, the trial court's imposition of the upper term sentence on count 3 may be affirmed. However, as we previously noted, the second question regarding the possible prejudice to a defendant in this situation is not whether the trial court could have relied on the single aggravating factor of Lopez's recidivism to impose the upper term sentence; unquestionably the trial court may still rely on any single permissible aggravating factor to select an upper term sentence under the newly-revised triad system. Rather, the second relevant prejudice question is whether we can be assured that the trial court *would have exercised its discretion to impose the upper term* based on a single permissible aggravating factor, or even two or three permissible aggravating factors, related to the defendant's prior convictions, when the court originally relied on both permissible and impermissible factors in selecting the upper term. When a trial court increases a defendant's sentence by relying on factors that are inapplicable, duplicative, or improperly weighed, a reviewing court assesses the prejudice to the defendant by determining whether it is reasonably probable that a more favorable sentence would have otherwise been imposed absent the trial court's improper reliance on such factors. (*People v. Scott* (1994) 9 Cal.4th 331, 355.) This is because " '[d]efendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.]" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391; see *People v.*

19

*Marquez* (1983) 143 Cal.App.3d 797, 803 ["an erroneous understanding by the trial court of its discretionary power is not a true exercise of discretion"].) Therefore, where a trial court cannot have acted with " ' "informed discretion," ' " "the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' [Citations.]" (*Gutierrez*, at p. 1391.)[11]

---

[11] Given this analysis, we respectfully disagree with a recent opinion by Division Three of the First Appellate District in *People v. Flores* (2022) 75 Cal.App.5th 495. The *Flores* court concluded that even where a defendant is entitled to retroactive effect of Senate Bill No. 567 on appeal, an upper term may be affirmed without remanding for resentencing as long as the reviewing court is satisfied, beyond a reasonable doubt, that "the jury would have found true at least one aggravating circumstance." (*Flores*, at pp. 500−501, citing *People v. Sandoval* (2007) 41 Cal.4th 825, 839.) The question of prejudice under retroactive application of the revised triad system involves a two-step process, neither of which includes a determination as to whether the trial court relied on a single, or even a few, permissible factors in selecting an upper term. Rather, under the new version of the triad system set forth in section 1170, the initial relevant question for purposes of determining whether prejudice resulted from failure to apply the new version of the sentencing law is whether the reviewing court can conclude beyond reasonable doubt that a jury would have found true beyond a reasonable doubt *all* of the aggravating factors on which the trial court relied in exercising its discretion to select the upper term. If the answer to this question is "yes," then the defendant has not suffered prejudice from the court's reliance on factors not found true by a jury in selecting the upper term. However, if the answer to the question is "no," we then consider the second question, which is whether a reviewing court can be certain, to the degree required by *People v. Watson* (1956) 46 Cal.2d 818, 836, that the trial court would nevertheless have exercised its discretion to select the upper term if it had recognized that it could permissibly rely on only a single one of the aggravating factors, a few of the aggravating factors, or none of the aggravating factors, rather than all of the factors on which it previously relied. If the answer to both of these questions is "no," then it is clear that remand to the trial court for resentencing is necessary.

The record does not clearly indicate that the trial court would have exercised its discretion to impose an upper term based on an aggravating factor relating to Lopez's prior convictions, particularly given that the court relied on a long list of aggravating factors in selecting the upper term. The trial court offered no indication that it would have selected an upper term sentence even if only a single aggravating factor or some subset of permissible factors were present. Because we cannot conclude that the trial court would have selected an upper term sentence based on a single permissible aggravating factor or on some constellation of permissible aggravating factors, we conclude that remand is required to allow the trial court the opportunity to exercise its discretion to make its sentencing choice in light of the recent amendments to section 1170.

On remand, the People may elect to proceed under the requirements of the newly-amended version of section 1170, subdivision (b), which would permit the People to prove the existence of aggravating factors beyond a reasonable doubt to a jury, unless the defendant waives the right to a jury and agrees to have the factors decided by the court beyond a reasonable doubt; alternatively, the People may accept resentencing on the record as it stands.

In a separate supplemental brief, Lopez contends that he is entitled to resentencing pursuant to the revised version of Penal Code section 654, which was amended by Assembly Bill No. 518 (Stats. 2021, ch. 441), effective January 1, 2022. Assembly Bill No. 518 amended Penal Code section 654 to remove the requirement that a court impose the longest sentence when a defendant is convicted of more than one offense arising from the same conduct, such that a court now has discretion to select a longer or shorter sentence when Penal Code section 654 applies. (See § 654, subd. (a).)

Because we have concluded that we must vacate Lopez's sentence and remand for resentencing, on remand the trial court may revisit all of its prior sentencing decisions in light of all new legislation, including Assembly Bill No. 518. (See *People v. Valenzuela* (2019) 7 Cal.5th 415, 424–425 ["[T]he full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant"]; accord, *People v. Buycks* (2018) 5 Cal.5th 857, 893.)

IV.

DISPOSITION

Lopez's convictions are affirmed; his sentence is vacated. On remand, with respect to count 3, the People may elect to proceed by meeting the requirements of the amended version of section 1170, subdivision (b)(2) regarding the requirement that true findings on facts underlying aggravating circumstances other than a prior conviction be found by a jury or admitted by the defendant, or alternatively, to have the court resentence Lopez on the record as it stands. After the People make this election, and after the court conducts any further proceedings that may be necessary, the trial court is directed to resentence Lopez consistent with current applicable sentencing laws.

AARON, J.

WE CONCUR:

HUFFMAN, Acting P. J.

IRION, J.